STATE of Indiana, Appellant–
Plaintiff Below,

v.

Charles J. WILLIAMS and Lamont
Grace, Appellees–Defendants
Below.

No. 34A02–9209–CR–00443.[1]

Court of Appeals of Indiana,
Third District.

June 17, 1993.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant-plaintiff.

Scott A. Kinsey, Kinsey Law Firm, for Charles J. Williams.

Steven K. Raquet, Deputy Public Defender, Kokomo, for Lamont Grace.

STATON, Judge.

The State of Indiana brings this interlocutory appeal from the trial court's order granting Charles Williams' ("Williams") and Lamont Grace's ("Grace") motions to suppress illegally seized evidence. The State raises the sole issue of whether the trial court erred in granting the motions to suppress.

We affirm.

On March 27, 1992, Karen Giles ("Giles") telephoned Captain Walter Adams ("Adams") of the Kokomo Police Department and informed him that Williams and Grace had arrived at the residence where Giles was staying as a guest, and that they had cocaine in their possession. Giles, a reliable informant for the police, reported that she had seen the cocaine and had heard Williams and Grace discuss plans to distribute the cocaine after moving some or all of it to another location. Adams told Giles to call him back in a few hours, about 3:00 p.m., to update him on the two men's activities.

Meanwhile, Adams went to the residence and maintained a surveillance for approximately one hour, during which time he observed a man matching the description Giles gave of Grace enter the residence. Adams returned to the police station shortly before 3:00 p.m., whereupon Giles telephoned and advised Adams she had witnessed a cocaine transaction between Grace and a third person in the residence.

1. This case was assigned to this office by order of the Chief Judge.

Adams told Giles to call him again around 5:00 p.m.

Adams and some other uniformed officers then resumed the surveillance at the residence at approximately 3:15 p.m. During this surveillance, Adams again observed the man fitting Grace's description arrive at the house, this time carrying a bag of groceries. At 3:50 p.m., Adams and the other officers approached the residence in order to obtain the occupant's consent to a search therein. Adams knocked on the front storm door and loudly announced, "police officers". Record, p. 85. As he knocked, Adams was able to see into the living room and he observed Williams jump off the couch and run into another room. Adams immediately opened the front door and ran after Williams. When Adams entered the kitchen, he found Williams and Giles there, and observed on the floor numerous plastic packets of what turned out to be cocaine. Giles testified at the suppression hearing that Williams had removed the cocaine from his pocket and had thrown it on the floor just before Adams ran into the kitchen. The officers seized the cocaine and arrested both Williams and Grace, who were later charged with Dealing in Cocaine and Conspiracy to Deal in Cocaine, class A felonies.[2]

When a search is conducted without a search warrant, the State bears the burden of proving it was justified by one of the well-delineated exceptions to the warrant requirement. *State v. Tucker* (1992), Ind.App., 588 N.E.2d 579, 580. Because the trial court found the State failed to meet its burden of proof, the State is appealing from a negative judgment. We will reverse the judgment only where the uncontradicted evidence points unerringly to a conclusion opposite that reached by the trial court. *Id.*

The State argues the search was justified because the officers had probable cause to believe illegal materials were on the premises and, based on surrounding circumstances, they reasonably concluded that actual or imminent destruction of evidence was taking place. *See, Sayre v. State* (1984), Ind.App., 471 N.E.2d 708, 714, *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336. In *Sayre,* police officers went to the defendant's residence to question her about a theft. When an officer knocked on the door and announced he was with the police, the officer heard someone inside yell "Police!" and he heard the sound of rapidly receding footsteps. The officer simultaneously looked inside and observed people moving away from the kitchen table carrying what appeared to be drug paraphernalia. This court held that the subsequent warrantless search was justified because it was reasonable for the officers to conclude that destruction of the evidence was about to take place. *Id.* In reaching the decision in *Sayre,* however, this court noted there was no evidence the officers created the emergency in order to justify the entry and search. *Id.* at 715, citing *United States v. Rosselli* (1974), 7th Cir., 506 F.2d 627, 630. It is on this basis that we distinguish the present cause from *Sayre.*

In *Rosselli,* government agents received information from a reliable informant that the defendant possessed illegal drugs in his apartment. The agents went to the defendant's apartment, knocked on the door, and announced, "It's the police, we want to talk to you." When the agents heard scuffling movement, the sound of the chain lock on the front door being secured, a voice calling, "Don't open the door for anybody," and footsteps retreating toward the rear of the apartment, they forcibly entered the apartment and found illegal drugs therein. The trial court in *Rosselli* sustained the defendant's motion to suppress and the Seventh Circuit affirmed because the emergency which ensued was foreseeable by the agents and was created by their actions. *Rosselli, supra,* at 630.

We believe the facts in the present cause more closely resemble those in *Rosselli* because, unlike the officers in *Sayre,* Adams had probable cause to believe there were drugs in the residence *before* he knocked on the front door. We do not agree that

**2.** IND.CODE 35–48–4–1(a)(2)(C), (b)(1) (Supp. 1992); IND.CODE 35–41–5–2 (1988).

the emergency to which the State refers, which was created by the officers' approach and was clearly foreseeable to them, justified the warrantless search. The evidence does not adequately explain why no attempt to secure a search warrant was made before the officers approached the residence. The trial court was correct in granting Williams' and Grace's motions to suppress.

Affirmed.

GARRARD and SULLIVAN, JJ., concur.