Laquane WARE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A02–0206–CR–440.

Court of Appeals of Indiana.

Jan. 31, 2003.

Brant J. Parry, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Depu-

ty Attorney General, Indianapolis, IN, Attorneys for Appellee.

### OPINION

VAIDIK, Judge.

#### Case Summary

In this interlocutory appeal, Laquane Ware contends that the trial court erred in denying his motion to suppress evidence obtained as a result of the search of his home. Specifically, Ware argues that the police officers made an illegal entry into his home, which invalidated his subsequent consent to search. Because we find that Ware's consent to search was the product of an illegal entry into his home and was therefore invalid, we conclude that the trial court erred in denying his motion to suppress.

#### Facts and Procedural History

On October 24, 2001, Kokomo Police Officer Brannon Carpenter went to 914 East Haven Street in Kokomo to look for Bonnie Baker, a suspect in an unrelated case. When Officer Carpenter was unable to locate Baker at that address, he proceeded to 914½ East Haven Street because he thought that the resident of that apartment might be able to help him locate Baker. As he approached this apartment, Officer Carpenter smelled "burnt or burning marijuana." Tr. p. 6. Officer Carpenter knocked on the door, and Ware answered it. As Ware opened the door, Officer Carpenter detected "the strong smell of burning marijuana." Tr. p. 7. Officer Carpenter did not see anyone else inside the apartment. After inquiring about Baker, Officer Carpenter asked Ware for his identification. Ware closed the door and went to retrieve his identifi-

cation. Approximately three minutes later, Ware returned with his identification. During those three minutes, Officer Carpenter heard Ware walking around the apartment. After Ware handed Officer Carpenter his identification, Officer Carpenter, without Ware's consent or a search warrant, entered Ware's apartment in order to secure it to prevent the destruction of possible evidence. He also called for back-up, and two additional police officers arrived moments later. Once inside the apartment, Officer Carpenter read Ware his *Miranda* warnings and asked Ware for his consent to search the apartment. Officer Carpenter explained that although Ware had the right to refuse his consent to search, if he chose to do so, the other officers would secure the apartment while he attempted to get a search warrant. Ware consented to the search and signed a consent to search form. During the search of Ware's apartment, the officers found marijuana, cocaine, a Schedule II generic drug, scales, guns, and a large amount of cash bundled in rubber bands.

The State subsequently charged Ware with Possession of Cocaine as a Class A felony [1]; Possession of a Controlled Substance as a Class C felony [2]; Dealing in Marijuana as a Class C felony [3]; and Possession of Marijuana as a Class A misdemeanor. [4] On November 5, 2001, Ware filed a motion to suppress the evidence obtained as a result of the search of his home. After a hearing, the trial court denied his motion. This interlocutory appeal ensued.

#### Discussion and Decision

 Ware appeals the trial court's denial of his motion to suppress. He raises

---

**1.** Ind.Code § 35–48–4–6(b)(3)(B)(ii).

**2.** Ind.Code § 35–48–4–7(a)(2)(B).

**3.** Ind.Code § 35–48–4–10(b)(2)(B)(ii).

**4.** Ind.Code § 35–48–4–11(1).

one issue, which we state as the trial court erred in denying his motion to suppress because the police officers made an illegal entry into his home, which invalidated his subsequent consent to search. A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its ruling only where it is shown that the trial court abused that discretion. *Ransom v. State*, 741 N.E.2d 419, 421 (Ind. Ct.App.2000), *trans. denied.* A trial court's decision to deny a motion to suppress is reviewed in a manner similar to other sufficiency matters. *Id.* Upon reviewing a motion to suppress, we do not reweigh the evidence or judge the credibility of witnesses but instead consider all uncontroverted evidence together with the conflicting evidence that supports the trial court's decision. *Id.* However, unlike the typical sufficiency of the evidence case, we must also consider the uncontested evidence favorable to the defendant. *Id.*

The State argues that the trial court properly denied Ware's motion to suppress because an exigent circumstance existed which justified the police officers' warrantless entry into Ware's apartment and because Ware gave a valid consent to the search. The State also argues that even if the officers' entry was illegal, Ware's "consent is valid ... because ... [it] was not a result of the entry." Appellee's Br. p. 3. We first address whether an exigent circumstance existed which justified the officers' warrantless entry into Ware's home.

The Fourth Amendment to the United States Constitution reads in part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" The purpose of this provision is to protect citizens from State intrusions into their homes. *Esquerdo v. State*, 640 N.E.2d 1023, 1026 (Ind.1994). As such, "[s]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Warner v. State*, 773 N.E.2d 239, 245 (Ind.2002) (quotation omitted). One such exception is when exigent circumstances exist. *Smock v. State*, 766 N.E.2d 401, 404 (Ind.Ct.App.2002). One exigent circumstance permits the State to enter a home when government agents believe that evidence may be destroyed or removed before a search warrant can be obtained. *State v. Straub*, 749 N.E.2d 593, 600 (Ind.Ct.App.2001). Under this exigent circumstance, the police officer must have an objective and reasonable fear that the evidence is about to be destroyed. *Id.* However, "[t]he fact that narcotics are involved does not, standing alone, amount to exigent circumstances justifying a warrantless search or arrest." *Esquerdo*, 640 N.E.2d at 1027 (quotation omitted). The burden is on the State to demonstrate exigent circumstances to overcome the presumption of unreasonableness that accompanies all warrantless home entries. *Straub*, 749 N.E.2d at 598.

Here, the State asserts that the warrantless entry into Ware's apartment was legal because Officer Carpenter had an objective and reasonable fear that marijuana was about to be destroyed. In support, the State relies upon the following facts: Officer Carpenter smelled burning marijuana when Ware opened the door; Ware shut the door when he went to retrieve his identification; Ware was gone three minutes before he returned with his identification; and during those three minutes, Officer Carpenter heard Ware walking around the apartment. The facts of this case, however, are much different from the facts in those cases where this exigent circumstance was found to exist. For example,

in *Sayre v. State,* 471 N.E.2d 708 (Ind.Ct. App.1984), *reh'g denied, trans. denied,* police officers went to the defendant's home to question her about a theft. The officers knocked on the door and stated that they were police officers when questioned by a female inside. The female reacted by shouting "Police!" and ran away from the door. Through a window, the officers could see people inside the home moving rapidly away from the kitchen table with drug paraphernalia. The officers subsequently entered the home without a warrant. The court held that this warrantless entry was proper since the actual or imminent destruction of evidence was most likely to occur. *Id.* at 715; *see also Diggs v. State,* 531 N.E.2d 461, 464 (Ind.1988); *cf. Hawkins v. State,* 626 N.E.2d 436, 439 (Ind.1993) (finding police officers' warrantless entry into the defendant's home illegal under the destruction of evidence exigent circumstance where the officers heard nothing before knocking on the defendant's door and as they waited at the door, they did not hear anyone running inside); *Harless v. State,* 577 N.E.2d 245, 248–49 (Ind.Ct.App.1991) (finding police officers' warrantless search illegal under the destruction of evidence exigent circumstance in part because the officers did not "observe any persons inside the home scrambling frantically to destroy evidence of controlled substances before the officers entered").

■ Unlike the facts of *Sayre,* Officer Carpenter did not hear Ware yell to anyone inside the apartment that the police were there. In fact, when Ware opened the door, Officer Carpenter did not see anyone else inside the apartment or any drugs in plain view. Additionally, Ware cooperated with Officer Carpenter the entire time and returned to the door with his identification after his initial encounter with Officer Carpenter. Although Ware was gone for approximately three minutes before returning with his identification, during that time period Officer Carpenter did not hear Ware running through the apartment; rather, he just heard Ware "walking around." Tr. p. 7. Furthermore, Officer Carpenter did not hear any toilets flushing or anything else indicative of the destruction of the marijuana. Based on the facts of this case, we cannot conclude that the State met its burden of proving that Officer Carpenter had an objective and reasonable fear that the marijuana was about to be destroyed. As such, the officers' warrantless entry into Ware's home was not justified by this exigent circumstance and was therefore illegal. We next address whether the illegal entry invalidated Ware's subsequent consent to search.

The State argues that even if the police officers' entry was illegal, Ware's consent to search is still valid because it was not the result of the entry. In *Galvin v. State,* 582 N.E.2d 421 (Ind.Ct.App.1991), *trans. denied,* the State made the same argument. There, within an hour after the officers made an illegal entry into the defendant's home and with six to ten officers still present, the defendant was requested to give her consent to a search without being told that the court had refused to give the officers a search warrant. In addressing this issue, the court stated that the relevant inquiry was " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* at 424 (quoting *Snellgrove v. State,* 569 N.E.2d 337, 341 (Ind. 1991)). The court identified several factors that are to be considered in determining whether a consent to search given after an illegal entry is an act of free will sufficient to purge the primary taint or is

the product of the illegal entry and thus invalid. *Id.* These factors include whether *Miranda* warnings were given; the temporal proximity of the illegal entry and the consent to search; the presence of intervening circumstances; the voluntariness of the consent; and particularly the purpose and the flagrancy of the official misconduct. *Id.* Applying these factors, the court found that the defendant's consent was not given voluntarily and independent of the illegal entry and was therefore invalid. *Id.* As a result, the court concluded that the subsequent search was illegal and the evidence derived therefrom should not have been admitted at trial. *Id.*

Applying those same factors here, we reach the same conclusion as the *Galvin* court. Although Officer Carpenter read Ware his *Miranda* warnings, Ware was asked to consent to a search within minutes of Officer Carpenter's warrantless entry into his home. Furthermore, there were no intervening circumstances between Officer Carpenter's warrantless entry and his request for consent, other than the arrival of two additional police officers. Even though Ware signed a consent to search form, Officer Carpenter explained that if he did not do so, the other officers would secure the inside of the apartment while he attempted to get a search warrant. The purpose of Officer Carpenter's warrantless entry was to secure the residence for the possible discovery of marijuana; however, no exigent circumstances existed. Finally, as for the flagrancy of the misconduct, we note that a warrantless home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense has been committed. *Haley v. State*, 696 N.E.2d 98, 103 (Ind.Ct.App.1998) (noting that possession of one marijuana cigarette is a minor offense for purposes of warrantless home entries), *trans. denied.* As the court found

in *Galvin*, we simply cannot overlook the inherent coercive effect such an intrusion would have on Ware's decision to consent to a search. *Galvin*, 582 N.E.2d at 424. As such, we cannot say that Ware's consent was given voluntarily and independent of the illegal entry. Accordingly, we hold that Ware's consent was a product of the illegal entry and was therefore invalid. *See Harless*, 577 N.E.2d at 249 (finding that the defendant's "consent, given as a consequence of the illegal entry, is also inadmissible."). Consequently, the subsequent search was illegal, and the trial court abused its discretion in not suppressing the evidence.

Reversed.

FRIEDLANDER, J., and NAJAM, J., concur.